UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARVEL SCOTT HASE,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:16-cv-2522-KJN<br><br>ORDER |

Plaintiff Carvel Scott Hase seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from April 1, 2010, plaintiff's alleged disability onset date, through December 31, 2012, plaintiff's date last insured. (ECF No. 13.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 14.) Subsequently, plaintiff also filed a reply brief. (ECF No. 18.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 5, 7.)

1

After carefully considering the record and the parties' briefing, the court GRANTS IN PART plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the action for further administrative proceedings.

I.     BACKGROUND

Plaintiff was born on February 12, 1969; has a bachelor's degree and a paralegal certificate; can communicate in English; and previously worked primarily in the mortgage loan industry. (Administrative Transcript ("AT") 39, 51.)[2] On December 16, 2012, plaintiff applied for DIB, alleging that he became disabled on April 1, 2010, due to headaches, a levator muscle spasm, depression, and temporomandibular joint disorder. (AT 13, 79, 167, 190.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on October 27, 2014, at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 32-78.) The ALJ subsequently issued a decision dated February 17, 2015, determining that plaintiff had not been under a disability, as defined in the Act, from April 1, 2010, plaintiff's alleged disability onset date, through December 31, 2012[3], plaintiff's date last insured. (AT 13-23.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 29, 2016. (AT 1-3.) Plaintiff subsequently filed this action on October 22, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED[4]

On appeal, plaintiff raises the following issues: (1) whether the ALJ erred at step two of the sequential disability analysis; (2) whether the ALJ improperly discounted the opinions of

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] In some portions of the ALJ's decision, a date last insured of December 31, 2013 is referenced. Because plaintiff's date last insured is not material to the court's decision here, any inconsistencies regarding plaintiff's date last insured can be resolved on remand.

[4] Plaintiff's briefing raised the issues in a somewhat different order.

2

plaintiff's treating physicians; (3) whether the RFC assessment itself is unsupported; (4) whether the ALJ improperly discounted plaintiff's credibility; and (5) whether the ALJ erroneously discounted the testimony of third party witnesses.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[5] As an initial matter, the ALJ found that plaintiff last met the

---

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

3

insured status requirements of the Act on December 31, 2012. (AT 15.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date of April 1, 2010, through his date last insured of December 31, 2012. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured: migraines, temporomandibular joint disorder, degenerative disc disease of the cervical spine, and tinnitus. (AT 16.) However, at step three, the ALJ determined that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; sit for 8-hours in an 8-hour day with normal breaks; stand or walk for 8-hours in an 8-hour day with normal breaks; occasionally flex, twist, and extend the cervical spine; no climbing ladders, ropes, and scaffolds; occasionally be exposed to loud noise; no crawling; no work from unprotected heights or around complicated or hazardous machinery; the claimant can receive, understand, remember, and carry out simple jobs tasks; frequently perform detailed tasks; occasionally perform

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

complex tasks; frequently interact with the public, coworkers, and supervisors; adjust to simple job changes in job routine; and make simple workplace judgments.

(AT 18.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work through the date last insured. (AT 22.) Nevertheless, at step five, the ALJ found that, based on plaintiff's age, education, work experience, RFC, and the VE's testimony, there were other jobs that existed in significant numbers in the national economy that plaintiff could have performed through the date last insured. (AT 22-23.) Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from April 1, 2010, plaintiff's alleged disability onset date, through December 31, 2012, plaintiff's date last insured. (AT 23.)

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erred at step two of the sequential disability analysis*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

Plaintiff contends that the ALJ erred by finding plaintiff's mental impairments of depressive disorder, anxiety disorder, and obsessive compulsive disorder not severe at step two, because the ALJ's decision assessed at least moderate difficulties in concentration, persistence, and pace, and included mental limitations in the RFC. That argument lacks merit, because the ALJ's decision specifically assessed the moderate difficulties in concentration, persistence, and pace *due to plaintiff's pain*. (AT 17.) Therefore, although mental limitations were found, the ALJ's decision did not attribute them to a mental disorder, but instead to plaintiff's pain resulting from his migraines. Furthermore, even though the medical records contain some scattered references to diagnoses of depressive disorder, anxiety disorder, and obsessive compulsive

5

disorder, no medical source assessed any specific functional limitations attributable to such impairments. As such, the ALJ properly found that the record did not support a finding that those mental impairments were severe for purposes of step two. Moreover, as required by applicable law, the ALJ expressly considered all of plaintiff's impairments when determining plaintiff's RFC, "including impairments that are not severe." (AT 14.)

Therefore, the court finds no error at step two.

*Whether the ALJ improperly discounted the opinions of plaintiff's treating physicians*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, plaintiff's primary care treating physician, Dr. Tobias Paiva, submitted multiple medical source statements indicating as follows:

> Mr. Hase has been under my care since May 10, 2011 and due to ongoing severe, debilitating headaches, he has been unable to maintain a healthy, pain-free existence much less consistent employment. In my experience of treating this patient I have found him to be compliant with all medical treatment recommendations and eager to improve his symptoms in order to pursue regular employment.

(See, e.g., AT 494.) The ALJ discussed Dr. Paiva's opinion, but gave it reduced weight, because it was essentially conclusory in nature. (AT 20.) The court agrees that Dr. Paiva's opinion, at least standing alone, is conclusory, and would be inclined to defer to the ALJ's assessment of the opinion. However, as plaintiff points out, the ALJ also entirely failed to discuss the opinion of plaintiff's treating neurologist, Dr. David Chesak.

Dr. Chesak provided two medical source statements. On May 23, 2014, he wrote:

> I first saw Mr. Scott Hase on 2/20/14 in the Sutter Neurology Clinic for severe recurrent chronic headaches that began in 2010. He had already seen 2 prior neurologists as well as a pain specialist, subsequently failing multiple medications that were prescribed to try and bring him relief. Under my care, we are now attempting some additional options, and if they do not work, he will need to be referred to a specialty headache center. Please consider this additional information in your decision to offer him disability benefits which I believe are appropriate until his disabling condition can be resolved.

(AT 507.) Thereafter, on October 9, 2014, Dr. Chesak provided the following additional information:

> [Plaintiff] first presented to my office in February 2014 complaining of a chronic headache described as a band from the right temple across the top of the ear and down the scalp posterior to the ear running toward the neck, sometimes dull and other times of ice-pick quality, that had begun upon waking from a nap in

7

> October 2010 and has since persisted continuously. Between 2010 and 2014, he had seen neurologist Dr. Knox, neurologist Dr. Grewal, and pain management specialist Dr. Nijher. Under these doctors, he was treated unsuccessfully with multiple courses of occipital nerve blocks, trigger point injections, and Botox injections as well as multiple medications including Indocin, Naprosyn, verapamil, and nortriptyline for prophylaxis and Fioricet, Midrin, Imitrex, Cafergot, Flexeril, Valium, and baclofen for treatment. He also tried physical therapy, TENS, and had a dentist manufacture a jaw guard to wear at night. I began managing his care in 2/2014, trying steroid and Depacon infusions, Depakote, Topamax, Inderal, Indocin, Effexor, and Botox. More recently, his PCP has prescribed Fioricet, Oxycodone, and Tylenol with codeine. Unfortunately, either these treatments or medications have not been efficacious or caused intolerable side-effects, and his chronic headache persists. His PCP is currently referring him to Stanford for further assistance.

(AT 732.) Dr. Chesak's medical source statements are generally supported by the medical records, which document that plaintiff had consistently sought care and pursued the above-mentioned treatment modalities. They are also consistent with the (albeit conclusory) opinion of treating primary care provider Dr. Paiva. Consequently, on this record, the court cannot find that the ALJ's failure to consider Dr. Chesak's opinion was harmless error. Indeed, because headaches or migraines are difficult impairments to evaluate because they do not always have objective physical manifestations, a proper consideration of plaintiff's documented treatment, including the opinion of a neurological specialist, is especially important.

Therefore, the court finds it appropriate to remand the case for further consideration of Dr. Chesak's opinion along with the record as a whole. The ALJ is also free to develop the record in any other respects deemed appropriate, such as obtaining additional medical or vocational expert testimony. Importantly, the court does not instruct the ALJ to credit any particular opinion or evidence on remand. Indeed, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, at any particular step on remand, provided that the ALJ's decision is based on proper legal standards and supported by substantial evidence in the record as a whole.

The court specifically declines plaintiff's invitation to remand the case for an award of benefits. As the Ninth Circuit has explained, "we generally remand for an award of benefits only in rare circumstances where no useful purpose would be served by further administrative

proceedings and the record has been thoroughly developed." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100 (9th Cir. 2014). Here, despite the court's conclusion that further evaluation of Dr. Chesak's opinion is warranted, there is other evidence in the record that potentially raises serious doubts as to plaintiff's disability. For example, although plaintiff represented that his headache stayed more or less constant, he had actually been working full-time at a kiosk in Home Depot for a solar energy company for about 3 months at the time of the administrative hearing. (AT 39-42.) To be sure, that evidence is potentially subject to different interpretations, because plaintiff also testified to having great difficulties with the job and that he did not believe that he would be able to sustain it much longer. (AT 41, 53-54.) Nevertheless, the court cannot conclude that further record development and administrative proceedings would serve no useful purpose.

*Other Issues*

In light of the court's conclusion that the case should be remanded for further consideration of the medical opinion evidence, including Dr. Chesak's opinion, the court declines to reach the other issues concerning assessment of the RFC, plaintiff's credibility, and the credibility of third party witnesses. On remand, the ALJ will have an opportunity to reconsider those issues, if appropriate.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is GRANTED IN PART.
2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is DENIED.
3. The final decision of the Commissioner is REVERSED, and the case is REMANDED for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

////

////

////

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: February 12, 2018

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE